**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| UNITED STATES<br><br>v.<br><br>JOHN RAYMOND CONNER, III,<br><br>*Defendant*. | Criminal Action No. 24 - 350 (LLA) |

## <u>MEMORANDUM OPINION AND ORDER</u>

Defendant John Raymond Conner, III, is charged by superseding indictment with eighteen offenses: First-Degree Sexual Abuse While Armed (Aggravating Circumstances), in violation of D.C. Code §§ 22-3002(a)(1), 22-3020(a)(5), 22-3020(a)(6), and 22-4502 (Counts One through Eight); Kidnapping While Armed, in violation of D.C. Code §§ 22-2001 and 22-4502 (Count Nine); Assault with a Dangerous Weapon, in violation of D.C. Code § 22-402 (Count Ten); Blackmail, in violation of D.C. Code § 22-3252 (Count Eleven); Failure to Register as a Sex Offender, in violation of 18 U.S.C. § 2250(a) (Count Twelve); and Commission of a Crime of Violence While Failing to Register as a Sex Offender, in violation of 18 U.S.C. § 2250(d) (Counts Thirteen through Eighteen). ECF No. 35. The court has entered a plea of not guilty on Mr. Conner's behalf, Aug. 7, 2025 Minute Entry, and scheduled a trial date of October 26, 2026, *see* May 28, 2026 Minute Entry. Before the court is the United States' motion to take a deposition pursuant to Federal Rule of Criminal Procedure 15. ECF No. 74. The motion is fully briefed. ECF Nos. 74 to 76. For the reasons explained, the court denies the motion without prejudice to refiling.

## I.    LEGAL STANDARD

Under Rule 15, a party can seek leave to take a deposition of a "prospective witness . . . in order to preserve testimony for trial." Fed. R. Crim. P. 15(a)(1). "The court may grant the motion because of exceptional circumstances and in the interest of justice." *Id.* "To demonstrate that 'exceptional circumstances' necessitate a Rule 15 deposition, the party seeking the deposition must show: '(1) the materiality of the testimony; and (2) the unavailability of the witness to testify at trial.'" *United States v. Trabelsi*, No. 06-CR-89, 2023 WL 4341429, at *2 (D.D.C. Apr. 5, 2023) (quoting *United States v. Cooper*, 947 F. Supp. 2d 108, 112 (D.D.C. 2013)); *see United States v. Kelley*, 36 F.3d 1118, 1125 (D.C. Cir. 1994) (same).

"In assessing whether testimony is material for Rule 15(a)(1) purposes, courts have used the standard developed for applying and interpreting *Brady v. Maryland*, 373 U.S. 83 (1963)." *Trabelsi*, 2023 WL 4341429, at *2 (quoting *United States v. Vo*, 53 F. Supp. 3d 77, 81 (D.D.C. 2014)). "[E]vidence is 'material' within the meaning of *Brady* when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Id.* (alteration in original) (quoting *Smith v. Cain*, 565 U.S. 73, 75 (2012)). "[T]he witness need not provide totally unique testimony; nor does she need to be a 'critical' witness." *Id.* (alteration in original) (quoting *Vo*, 53 F. Supp. 3d at 82). But "the evidence or testimony must . . . not [be] corroborative or cumulative of other evidence." *Vo*, 53 F. Supp. 3d at 82 (alterations in original) (quoting *United States v. Jefferson*, 594 F. Supp. 2d 655, 667 (E.D. Va. 2009)).

As for unavailability, "[c]ourts evaluate whether a witness is 'unavailable' for purposes of Rule 15(a)(1) 'by reference to Federal Rule of Evidence 804(a).'" *Trabelsi*, 2023 WL 4341429, at *3 (quoting *Vo*, 53 F. Supp. 3d at 81). Under Rule 804(a)(5), a person is "unavailable as a

witness" if she "is absent from the trial or hearing and the . . . proponent [of the person's testimony] has not been able, by process or other reasonable means, to procure . . . [her] attendance." Fed. R. Evid. 804(a)(5); *see United States v. Straker*, 567 F. Supp. 2d 174, 180 (D.D.C. 2008). "[T]he party seeking the deposition need not prove conclusively that the prospective deponent will be unavailable to testify at trial," *Trabelsi*, 2023 WL 4341429, at *3 (quoting *Cooper*, 947 F. Supp. 2d at 113), but to grant a Rule 15(a)(1) motion, the court must conclude that "a substantial likelihood exists that [she] . . . will not testify at trial," *id.* (alterations in original) (quoting *United States v. Drogoul*, 1 F.3d 1546, 1553 (11th Cir. 1993)); *see Vo*, 53 F. Supp. 3d at 81; *Cooper*, 947 F. Supp. 2d at 113. "When the question is close[,] a court may allow a deposition in order to preserve a witness'[s] testimony, leaving until trial the question of whether the deposition will be admitted as evidence." *United States v. Mann*, 590 F.2d 361, 366 (1st Cir. 1978); *see United States v. Eyong*, No. 06-CR-305, 2007 WL 1576309 (D.D.C. May 30, 2007) ("[T]he text and structure of Rule 15, as well as judicial opinions interpreting the rule, distinguish between the availability of a deposition and the eventual admissibility of the deposition testimony at trial.").

## II.    DISCUSSION

The United States seeks a Rule 15 deposition of Bode Technology scientist Oluwakemi Sowemimo. ECF No. 74, at 1. Ms. Sowemimo "conducted laboratory work in the DNA testing of the sexual assault kit" of alleged victim A.S. by applying amplification procedures for one step of the DNA analysis. *Id.* at 3. According to the United States, the testing "ultimately showed [A.S.'s] and [Mr. Conner's] DNA in several of the sexual assault kit swabs." *Id.* As the government concedes, Mr. Conner has a Sixth Amendment right to confront and cross-examine Ms. Sowemimo. *Id.* Ms. Sowemimo, however, is a Nigerian citizen who intends to return to Nigeria in early August 2026. *Id.* at 1. The U.S. Department of State has "paused all immigrant

3

visa issuances to nationals of countries, including Nigeria, whose immigrants," President Trump has concluded, "have a high rate of collecting public assistance at the expense of the U.S. taxpayer." *U.S. Visa Services*, U.S. Embassy and Consulate in Nigeria;[1] *see* ECF No. 74, at 4 (citing the Nigerian Embassy website's description of the pause on issuing visas). Accordingly, the United States believes that Ms. Sowemimo "cannot be certain as to whether or when she may be permitted to return to the United States to live or work." ECF No. 74, at 4-5. Mr. Conner contends that the United States has failed to establish both the materiality and unavailability requirements. The court addresses each in turn, concluding that the United States has failed to establish exceptional circumstances warranting a Rule 15 deposition.[2]

### A.    Materiality

The United States' only argument why Ms. Sowemimo's testimony is material is that she conducted "amplification procedures" as part of the DNA testing of A.S.'s sexual assault kit—and testing showed both A.S.'s and Mr. Conner's DNA "in several of the . . . swabs." ECF No. 74, at 3. The government has not explained why testimony about this testing satisfies the materiality prong of Rule 15's exceptional-circumstances requirement. Implicit in the United States' two-sentence explanation of Ms. Sowemimo's work is the suggestion that Ms. Sowemimo is a relevant witness for establishing the chain of custody for physical evidence that the United States will seek to admit at trial. *See id.*; *see also United States v. Kelsey*, 917 F.3d 740, 748 (D.C. Cir.

---

[1] *Available at* https://perma.cc/UKK8-4J8E.

[2] Mr. Conner also argues that "a Rule 15 deposition under the circumstances . . . raises significant concerns that could threaten Mr. Conner's constitutional rights." ECF No. 75, at 3. Because the court denies the United States' motion, it declines to address Mr. Conner's suggestion that the immigration policy causing Ms. Sowemimo's purported unavailability may be "based on invidious racial or religious discrimination" and that the Constitution does "not permit altering [his Sixth Amendment rights] to further those potentially discriminatory interests." *Id.* at 8.

2019) (describing how a DNA technician recounted her lab work to "account[] for the chain of custody and physical processing of the DNA evidence").

"Because courts are 'essentially passive instruments of government,' [the parties must] 'frame the issues for decision.'" *Margolin v. Nat'l Ass'n of Immigr. Judges*, 146 S. Ct. 1285, 1288 (2026) (per curiam) (quoting *United States v. Sineneng-Smith*, 590 U.S. 371, 375-76 (2020)). "Mentioning an argument 'in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones' is tantamount to failing to raise it." *Al-Tamimi v. Adelson*, 916 F.3d 1, 6 (D.C. Cir. 2019) (quoting *Schneider v. Kissinger*, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005)).  The United States has failed to explain what role Ms. Sowemimo's testimony will play in admitting any DNA evidence at trial, ECF No. 75, at 4,[3] nor has it offered any explanation for *why* Ms. Sowemimo's absence from trial would affect the verdict, *see generally* ECF Nos. 74, 76.  To be sure, the government claims that Ms. Sowemimo's "testimony pertains only to the amplification step of the laboratory work," and that "[n]o one else can or will testify to that step."  ECF No. 76, at 2.  The United States further contends that the *result* of the DNA testing will "corroborate[] [the] sexual acts and/or contacts [that allegedly] occurred."  *Id.* at 4.  But simply describing Ms. Sowemimo's role in conducting amplification procedures does not show how her testimony will be used at trial to admit physical evidence, to explain the DNA test results of A.S.'s sexual assault kit to the jury, or to accomplish some other purpose that could

---

[3] In reply, the United States offers an additional paragraph with "technical details regarding [the] amplification" that Ms. Sowemimo completed, ECF No. 76, at 2, but "new arguments made in a reply brief are forfeited," *Conservation Force v. Jewell*, 160 F. Supp. 3d 194, 204 n.4 (D.D.C. 2016).  In any event, more detail about Ms. Sowemimo's work on Mr. Conner's case only solves half of the problem: the reply brief still does not explain what role Ms. Sowemimo's testimony would have at trial and why the absence of that testimony would affect the verdict, *see* ECF No. 76, at 2-3, and the sole cases on which the government relies are inapt, *see infra* pp. 5-6.

alter the jury's verdict.  Put differently, the United States has failed to link Ms. Sowemimo's testimony to the evidentiary issue it claims will be critical at trial.  As the party seeking the deposition, the United States bears the burden of showing the materiality of its own witness, whose testimony the assigned prosecutors can reasonably anticipate.  The court will not speculate or stack inferences to sustain the government's burden.

What is more, the United States provides no authority to support its position.  Instead, it relies on two Sixth Amendment Confrontation Clause cases—*Crawford v. Washington*, 541 U.S. 36 (2004), and *Smith v. Arizona*, 602 U.S. 779 (2024)—to establish materiality under Rule 15. Even if the Confrontation Clause and exceptional-circumstances analyses were identical, neither case shows why Ms. Sowemimo's testimony is material under Rule 15.  *Crawford* presented a question concerning the constitutionality of admitting a lay witness's "tape-recorded statement to the police describing [a] stabbing, even though [the defendant] had no opportunity for cross-examination."   541   U.S.   at 38.   The   case   does   not   bear   on   Rule 15's exceptional-circumstances inquiry.  Instead, the Court in *Crawford* rejected the use of a Confrontation Clause test that asked whether the out-of-court statement had "adequate 'indicia of reliability.'"  *Id.* at 40 (quoting *Ohio v. Roberts*, 448 U.S. 56, 66 (1980), *overruled by Crawford*, 541 U.S. 36).  It also underscored that, to avoid a Sixth Amendment violation from admitting an unavailable witness's testimonial statement, "the defendant [must have] had a prior opportunity for cross-examination." *Id.* at 54.  By citing *Crawford*, the United States seemingly suggests that introducing Ms. Sowemimo's statements at trial as hearsay rather than through live testimony might pose a Confrontation Clause problem, but that does not answer the relevant Rule 15 question, which is whether Ms. Sowemimo's absence will cause the "result of the proceeding [to be] different." *Trabelsi*, 2023 WL 4341429, at *2.

*Smith* also does not bear on Rule 15's materiality requirement. There, an expert witness "restate[d] an absent lab analyst's factual assertions to support his own opinion testimony." 602 U.S. at 783. The Court considered only whether the absent analyst's statements were hearsay—that is, introduced for "the truth of the matter asserted." *Id.* (quoting *Crawford*, 541 U.S. at 60 n.9). After concluding that the statements were introduced for their truth, *id.* at 792-800, the Court explained that its holding resolved only half of the Confrontation Clause issue: because the state courts hearing the defendant's appeals had never decided whether the absent analyst's statements were testimonial or were made with the primary purpose of creating evidence for use in a later trial, the Court remanded for the lower courts to "make that assessment," *id.* at 784-85, 801-02. *Smith* does little to establish the materiality of Ms. Sowemimo's testimony. As the court has noted, the Confrontation Clause and Rule 15 entail different inquiries; the former prohibits the government from eliciting testimonial hearsay if a defendant has not had an opportunity to cross-examine the hearsay declarant, *id.* at 785, and the latter asks whether, under the *Brady* standard, the missing witness's testimony would affect the substantive outcome at trial, *Trabelsi*, 2023 WL 4341429, at \*2. The *Smith* Court's hearsay holding does not show that, without Ms. Sowemimo's testimony, a verdict in Mr. Conner's trial might be different because, at most, it establishes only that the hearsay testimony might be excluded on constitutional grounds. Because the United States has not met its burden to prove that exceptional circumstances warrant a Rule 15 deposition, the court denies the motion without prejudice to refiling.

### B.    Unavailability

The United States' unavailability argument fares no better. According to the United States, Ms. Sowemimo "cannot be certain as to whether or when she may be permitted to return to the United States to live or work." ECF No. 74, at 4-5. While it is true that the government "need not

conclusively demonstrate trial unavailability," ECF No. 76, at 4, it must establish a "*substantial likelihood . . . that* [Ms. Sowemimo] will not testify at trial," ECF No. 74, at 3 (emphasis added) (quoting *Drogoul*, 1 F.3d at 1553). The court is mindful that when considering a close Rule 15 question, it may allow a deposition to proceed but reserve ruling on the admissibility of the deposition testimony until trial. *Mann*, 590 F.2d at 366. The court nevertheless concludes that the United States has failed to establish a "substantial likelihood" that Ms. Sowemimo will be unable to testify at trial.

To begin, the United States' scant discussion of its own immigration policies and of Ms. Sowemimo's background raises more questions than it answers. First, the government's description of the current visa policies for Nigerian nationals is inconsistent and incomplete. In its opening brief, the United States asserts that "the Department of State paused *all* immigrant visa issuances and placed *significant restrictions* on visas to nationals of 39 countries including Nigeria," *id.* at 4 (emphases added), so Ms. Sowemimo "cannot be certain . . . whether or when she may be permitted to return to the United States," *id.* at 4-5. In reply, it represents that Ms. Sowemimo "*may* be unable to return due to the *partial* suspension of U.S. visa applications from her country," ECF No. 76, at 5 (emphasis added). In both instances, the United States fails to allege that Ms. Sowemimo faces a substantial likelihood of being unable to testify at trial; instead, the Rule 15 motion describes only a lack of certainty.

The United States' characterization of the Nigerian visa policy as both an outright and a partial ban poses a separate problem, as it obscures important details about two different recent changes made by the Executive Branch. In December 2025, President Trump issued a proclamation banning the issuance of new visas to nationals of certain countries and substantially restricting the availability of new visas to nationals of other countries. *Presidential Proclamation:*

*Restricting and Limiting the Entry of Foreign Nationals to Protect the Security of the United States*, The White House ("Presidential Proclamation").[4]  The President only "partially restrict[ed] and limit[ed] the entry" of Nigerian nationals, *id.* § 1(j), by suspending the entry of Nigerians "as immigrants, and as nonimmigrants on B-1, B-2, B-1/B-2, F, M, and J visas," *id.* § 5(j)(ii), and directing consular officers to "*reduce* the validity for any other nonimmigrant visa issued to nationals of Nigeria to the extent permitted by law," *id.* § 5(j)(iii) (emphasis added).  A month later, the State Department issued guidance "paus[ing] all visa issuances to immigrant visa applicants" from various countries, including Nigeria, because "President Trump has made clear that immigrants must be financially self-sufficient and not be a financial burden to Americans." *Immigrant Visa Processing Updates for Nationalities at High Risk of U.S. Public Benefits Reliance*, U.S. Department of State ("State Department Guidance").[5]

Even if the United States had clearly described its own immigration policies, the court would be unable to determine how the Presidential Proclamation or State Department Guidance affects Ms. Sowemimo's ability to reenter the country because the government did not disclose her current immigration or visa status, nor did it detail whether Ms. Sowemimo will remain employed by Bode Technology while she is in Nigeria.  These facts bear on Ms. Sowemimo's ability to return to the United States—and therefore her unavailability under Rule 15.  As for the Proclamation, President Trump did not suspend the issuance of H-1B visas, *see* Presidential Proclamation § 5(j)(ii), which are available for certain "nonimmigrant professionals in specialty occupations . . . to temporarily enter the United States for employment in a specialty occupation," 20 C.F.R. § 655.700; *see* 20 C.F.R. § 655.715 (explaining that "specialty occupation means an

---

[4] *Available at* https://perma.cc/ZLA7-XSXH.

[5] *Available at* https://perma.cc/PK6Z-CEJT.

occupation that requires theoretical and practical application of a body of specialized knowledge, and attainment of a bachelor's or higher degree (or its equivalent) in the specific specialty"); *see also Nigeria: Reciprocity Schedule*, U.S. Department of State (indicating that the United States allows Nigerians to apply for H-1B visas).[6]  As for the State Department, its Guidance expressly states that "nonimmigrant visas," like the H-1B, "are not affected."  State Department Guidance, *supra*.  And, neither the Presidential Proclamation nor the State Department Guidance revoke immigrant or nonimmigrant visas "issued before the [policy's] applicable effective date."  Presidential Proclamation § 8(c); State Department Guidance, *supra* (explaining that "[n]o immigrant visas have been revoked as part of th[e] guidance" and nonimmigrant visas "are not affected").

In short, the court lacks the information necessary to determine—or even speculate—whether a "substantial likelihood" exists that Ms. Sowemimo will be unavailable for trial.  The United States appears not to have even verified her visa information or immigration status, and instead relies solely on her assessment of her ability to reenter the United States.  *See* ECF No. 74, at 1 ("[Ms. Sowemimo] *has advised* undersigned counsel that significant visa restrictions cause uncertainty regarding if and when she may return to the United States." (emphasis added)).  On the present record, it appears that Ms. Sowemimo may not be affected by the Executive Branch's new immigration policies—and, if she is, the United States may have various paths to secure her presence at trial.  *Cf. United States v. Burden*, 934 F.3d 675, 688-89 (D.C. Cir. 2019) (deciding whether the district court erroneously admitted deposition testimony at trial in violation of the Confrontation Clause because the witness was not "unavailable" and explaining that "[w]here the

---

[6] *Available at* https://perma.cc/93M9-SSCG.

government itself bears some responsibility for the difficulty of procuring the witness . . . , [it] will have to make greater exertions to satisfy the standard of good-faith and reasonable efforts than it would have if it had not played any role").

Accordingly, the United States' reliance on *Vo* and *Drogoul* is not persuasive. *See Vo*, 53 F. Supp. 3d at 81 (describing a potential deposition witness who had a detainer for her removal while in federal custody such that, "even if she wanted to testify voluntarily, she likely would have trouble re-entering the United States to do so because of her conviction"); *Drogoul*, 1 F.3d at 1553 (describing potential deposition witnesses "located outside the United States" who had "declared in open court their unwillingness to testify" and were subject to a treaty prohibiting the foreign country from forcibly "remov[ing]" them to the United States once they refused to testify); ECF No. 76, at 4-5 (conceding that Ms. Sowemimo is not unwilling to return to the United States for trial and does not have a criminal conviction that would interfere with her ability to reenter the country). While the United States need not conclusively establish Ms. Sowemimo's unavailability for Rule 15 purposes, the court is not satisfied that her own speculation concerning whether she may be able to return—based on potentially inapplicable visa restrictions—establishes the exceptional circumstances that Rule 15 demands.[7] *Cf. United States v. Bah*, 574 F.3d 106, 119 (2d Cir. 2009) (affirming the denial of a criminal defendant's motion for fees to conduct a deposition, which implicated a "similar necessity requirement" as Rule 15's unavailability standard, in part because the motion "lacked specificity as to . . . whether [the witnesses] could

---

[7] Because the court denies the United States' motion without prejudice, the government may file a renewed motion with additional facts and new arguments that it believes justify a Rule 15 deposition. The court also notes that, given the timing of the United States' motion, the court's decision denying the motion, and Ms. Sowemimo's travel plans, the United States is free to argue that other forms of relief—like a continuance of the scheduled trial date—are warranted to ensure that its witnesses are available to testify.

obtain visas"); *United States v. Daniels*, 194 F.R.D. 700, 702 (D. Kan. 2000) (denying the government's Rule 15 motion to depose a witness set to undergo brain surgery when "[c]ounsel d[id] not describe the nature of the surgery or the estimated recovery time" or otherwise "state the probability that . . . events will occur" that the government had said "'may'" make the witness unavailable).

### C.      Interest of Justice

Aside from the United States' failure to show exceptional circumstances justifying a Rule 15 deposition, two independent considerations lead the court to conclude that the interests of justice do not support taking the deposition that the United States requests. Courts have interpreted Rule 15's interest-of-justice language to require consideration of "countervailing considerations." *Vo*, 53 F. Supp. 3d at 82. "The D.C. Circuit has not addressed the issue[,] [b]ut the similarity of the standard . . . to tests found elsewhere in the Federal Rules suggests that balancing countervailing considerations is appropriate." *Id.* Mr. Conner identifies two such considerations based on the United States' proposed deposition procedures. The United States asks to conduct the deposition "just as if [Ms. Sowemimo] were testifying at trial": the court would preside over the deposition; Mr. Conner would have the right to be present and his counsel could cross-examine the witness; and the United States would videotape the testimony so that, if it were introduced at trial, the jury could see Ms. Sowemimo's demeanor. ECF No. 74, at 5. But, as Mr. Conner explains, the government has not provided its Rule 16 expert disclosures for Ms. Sowemimo— discovery that he would have prior to cross-examining her at trial. ECF No. 75, at 9 n.3. Nor has the United States provided any *Jencks* or *Giglio* material that could be available. *Id.* Although

these considerations may also bear on a deposition's admissibility at trial, they underscore why a deposition is not in the interests of justice at this time.[8]

### III.    CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that the United States' Motion to Take Deposition, ECF No. 74, is **DENIED** without prejudice to refiling.

**SO ORDERED.**

_____
LOREN L. ALIKHAN
United States District Judge

Date:   July 24, 2026

---

[8] The United States' disclosure of all material that is both relevant to Ms. Sowemimo's testimony and must be provided to Mr. Conner before trial may ameliorate the court's concern about his ability to adequately prepare for a deposition and effectively cross-examine Ms. Sowemimo. *See Cooper*, 947 F. Supp. 2d at 117 ("In the ordinary case, it makes sense to require disclosure of materials that the government possesses and must eventually turn over before trial, if the defense can make use of those materials in cross-examining a Rule 15 deponent.").