**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|   |   |
|---|---|
| UNITED STATES<br><br>v.<br><br>JOHN RAYMOND CONNER, III,<br><br>*Defendant*. | Criminal Action No. 24 - 350 (LLA) |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Defendant John Raymond Conner, III, is charged by superseding indictment with eighteen offenses: First-Degree Sexual Abuse While Armed (Aggravating Circumstances), in violation of D.C. Code §§ 22-3002(a)(1), 22-3020(a)(5), 22-3020(a)(6), and 22-4502 (Counts One through Eight); Kidnapping While Armed, in violation of D.C. Code §§ 22-2001 and 22-4502 (Count Nine); Assault with a Dangerous Weapon, in violation of D.C. Code § 22-402 (Count Ten); Blackmail, in violation of D.C. Code § 22-3252 (Count Eleven); Failure to Register as a Sex Offender, in violation of 18 U.S.C. § 2250(a) (Count Twelve); and Commission of a Crime of Violence While Failing to Register as a Sex Offender, in violation of 18 U.S.C. § 2250(d) (Counts Thirteen through Eighteen). ECF No. 35. The court has entered a plea of not guilty on Mr. Conner's behalf, Aug. 7, 2025 Minute Entry, and scheduled a trial date of October 26, 2026, *see* May 28, 2026 Minute Entry.

In July 2026, the United States filed a motion to take a deposition pursuant to Federal Rule of Criminal Procedure 15. ECF No. 74. After briefing, ECF Nos. 74 to 76, the court denied the motion without prejudice to refiling, ECF No. 78. Before the court is the United States' amended

motion to take a Rule 15 deposition, ECF No. 79, which is fully briefed, ECF Nos. 79, 81.[1]  For the reasons explained, the court grants the motion.

### I.    LEGAL STANDARD

Under Rule 15, a party can seek leave to take a deposition of a "prospective witness . . . in order to preserve testimony for trial." Fed. R. Crim. P. 15(a)(1).  "The court may grant the motion because of exceptional circumstances and in the interest of justice."  *Id.*  "To demonstrate that 'exceptional circumstances' necessitate a Rule 15 deposition, the party seeking the deposition must show: '(1) the materiality of the testimony; and (2) the unavailability of the witness to testify at trial.'"  *United States v. Trabelsi*, No. 06-CR-89, 2023 WL 4341429, at *2 (D.D.C. Apr. 5, 2023) (quoting *United States v. Cooper*, 947 F. Supp. 2d 108, 112 (D.D.C. 2013)); *see United States v. Kelley*, 36 F.3d 1118, 1125 (D.C. Cir. 1994) (same).

"In assessing whether testimony is material for Rule 15(a)(1) purposes, courts have used the standard developed for applying and interpreting *Brady v. Maryland*, 373 U.S. 83 (1963)." *Trabelsi*, 2023 WL 4341429, at *2 (quoting *United States v. Vo*, 53 F. Supp. 3d 77, 81 (D.D.C. 2014)).  "[E]vidence is 'material' within the meaning of *Brady* when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different."  *Id.* (alteration in original) (quoting *Smith v. Cain*, 565 U.S. 73, 75 (2012)).  "[T]he witness need not provide totally unique testimony; nor does she need to be a 'critical' witness."  *Id.* (alteration in original) (quoting *Vo*, 53 F. Supp. 3d at 82).  But "the evidence or testimony

---

[1] On July 31, 2026, the United States emailed the court and opposing counsel a copy of its reply in support of the amended motion, explaining that technical issues with CM/ECF precluded it from electronically filing the reply.  The court accepts the reply as timely filed and will forward the filing to the Clerk's Office for docketing.  And the court will refer in this opinion to the United States' reply as "Reply" because it currently does not have a CM/ECF docket number.

must . . . not [be] corroborative or cumulative of other evidence." *Vo*, 53 F. Supp. 3d at 82 (alterations in original) (quoting *United States v. Jefferson*, 594 F. Supp. 2d 655, 667 (E.D. Va. 2009)).

As for unavailability, "[c]ourts evaluate whether a witness is 'unavailable' for purposes of Rule 15(a)(1) 'by reference to Federal Rule of Evidence 804(a).'" *Trabelsi*, 2023 WL 4341429, at \*3 (quoting *Vo*, 53 F. Supp. 3d at 81).   Under Rule 804(a)(5), a person is "unavailable as a witness" if she "is absent from the trial or hearing and the . . . proponent [of the person's testimony] has not been able, by process or other reasonable means, to procure . . . [her] attendance." Fed. R. Evid. 804(a)(5); *see United States v. Straker*, 567 F. Supp. 2d 174, 180 (D.D.C. 2008).   "[T]he party seeking the deposition need not prove conclusively that the prospective deponent will be unavailable to testify at trial," *Trabelsi*, 2023 WL 4341429, at \*3 (quoting *Cooper*, 947 F. Supp. 2d at 113), but to grant a Rule 15(a)(1) motion, the court must conclude that "a substantial likelihood exists that [she] . . . will not testify at trial," *id.* (alterations in original) (quoting *United States v. Drogoul*, 1 F.3d 1546, 1553 (11th Cir. 1993)); *see Vo*, 53 F. Supp. 3d at 81; *Cooper*, 947 F. Supp. 2d at 113.   "When the question is close[,] a court may allow a deposition in order to preserve a witness'[s] testimony, leaving until trial the question of whether the deposition will be admitted as evidence." *United States v. Mann*, 590 F.2d 361, 366 (1st Cir. 1978); *see United States v. Eyong*, No. 06-CR-305, 2007 WL 1576309 (D.D.C. May 30, 2007) ("[T]he text and structure of Rule 15, as well as judicial opinions interpreting the rule, distinguish between the availability of a deposition and the eventual admissibility of the deposition testimony at trial.").

## II.   DISCUSSION

The United States seeks a Rule 15 deposition of Bode Technology scientist Oluwakemi Sowemimo.   ECF No. 79, at 1.   Ms. Sowemimo "conducted one of the steps in

laboratory work in the DNA testing of the sexual assault kit" of alleged victim A.S.  *Id.* at 8. Specifically, she completed DNA "amplification," *id.* at 8, which involves "copying each DNA segment of interest . . . using the polymerase chain reaction method" so that the DNA "is visible to the detection instrument," *id.* at 6.  According to the United States, the testing "ultimately showed [A.S.'s] and [Mr. Conner's] DNA in several of the sexual assault kit swabs."  ECF No. 74, at 3.  As the government concedes, Mr. Conner has a Sixth Amendment right to confront and cross-examine Ms. Sowemimo.  ECF No. 79, at 9.

Ms. Sowemimo, however, is a Nigerian citizen who intends to return to Nigeria in early August 2026 because her visa expires on or about August 15, 2026.  *Id.* at 1, 11.  She currently holds an F-1 Curricular Practical Training ("CPT") student visa, which has allowed her to complete undergraduate and graduate degrees while working for Bode Technology.  *Id.* at 11.  Due to the upcoming expiration of her visa, Ms. Sowemimo applied for an H-1B work visa, *id.*, which is available for certain "nonimmigrant professionals in specialty occupations . . . to temporarily enter the United States for employment in a specialty occupation," 20 C.F.R. § 655.700; *see* 20 C.F.R. § 655.715 (explaining that "*specialty occupation* means an occupation that requires theoretical and practical application of a body of specialized knowledge, and attainment of a bachelor's or higher degree (or its equivalent) in the specific specialty"); *see also Nigeria: Reciprocity Schedule*, U.S. Dep't of State (indicating that the United States allows Nigerians to apply for H-1B visas).[2] Ms. Sowemimo was not selected in the H-1B visa lottery.  ECF No. 79, at 11.

In the United States' view, recent "significant visa restrictions" imposed by the Executive Branch "cause uncertainty regarding if and when [Ms. Sowemimo] may return to the United

---

[2] *Available at* https://perma.cc/93M9-SSCG.

States" once her current visa expires. *Id.* at 1. Two such changes are relevant here. First, in December 2025, President Trump issued a proclamation banning the issuance of new visas to nationals of certain countries and substantially restricting the availability of new visas to nationals of other countries. *Presidential Proclamation: Restricting and Limiting the Entry of Foreign Nationals to Protect the Security of the United States*, The White House (Dec. 16, 2025) ("Presidential Proclamation").[3] The President "partially restrict[ed] and limit[ed] the entry" of Nigerian nationals, *id.* § 1(j), by suspending the entry of Nigerians "as immigrants, and as nonimmigrants on B-1, B-2, B-1/B-2, F, M, and J visas," *id.* § 5(j)(ii), and directing consular officers to "reduce the validity for any other nonimmigrant visa issued to nationals of Nigeria to the extent permitted by law," *id.* § 5(j)(iii). The Proclamation did not suspend the issuance of H-1B visas, *see id.* § 5(j)(ii), but, as explained, Ms. Sowemimo was unable to procure one through the lottery process. Second, the State Department issued guidance about a month later "paus[ing] all visa issuances to immigrant visa applicants" from various countries, including Nigeria, because "President Trump has made clear that immigrants must be financially self-sufficient and not be a financial burden to Americans." *Immigrant Visa Processing Updates for Nationalities at High Risk of U.S. Public Benefits Reliance*, U.S. Dep't of State (Feb. 2, 2026) ("State Department Guidance").[4] The United States embassy in Nigeria thus explains that it has "paused all immigrant visa issuances to nationals of . . . Nigeria, whose immigrants have a high rate of collecting public assistance at the expense of the U.S. taxpayer." *U.S. Visa Services*, U.S. Embassy & Consulate in Nigeria;[5] *see* ECF No. 74, at 4 (citing the Nigerian Embassy website's description of the pause on

---

[3] *Available at* https://perma.cc/ZLA7-XSXH.

[4] *Available at* https://perma.cc/V8NL-5JNG.

[5] *Available at* https://perma.cc/UKK8-4J8E.

issuing visas). The State Department Guidance expressly states that "nonimmigrant visas," like the H-1B, "are not affected." State Department Guidance, *supra*.

The United States contends that Rule 15's exceptional circumstances requirement is met because Ms. Sowemimo's role in completing DNA amplification makes her testimony material and the uncertainty surrounding her ability to return to the United States makes her unavailable for trial. ECF No. 79, at 3-11. Mr. Conner responds that the United States has failed to establish both materiality and unavailability, ECF No. 81, at 2-8, and that the interest of justice weighs against permitting a Rule 15 deposition, *id.* at 5-8. The court concludes that exceptional circumstances warrant a Rule 15 deposition, although it will reserve ruling on the admissibility of the deposition testimony until trial. *Mann*, 590 F.2d at 366.[6]

### A.    Materiality

In its original Rule 15 motion, the United States briefly described Ms. Sowemimo's testimony but offered no explanation why the absence of amplification testimony might affect a verdict at Mr. Conner's trial. *See* ECF No. 78, at 4-6. Now, the United States has provided

---

[6] In his opposition to the United States' initial Rule 15 motion, Mr. Conner also argued that "a Rule 15 deposition under the circumstances . . . raises significant concerns that could threaten [his] constitutional rights." ECF No. 75, at 3. He has "incorporate[d] and reassert[ed]" those arguments in his response to the amended motion. ECF No. 81, at 1 n.1. The court rejects Mr. Conner's passing assertion that the visa restrictions causing Ms. Sowemimo's unavailability may be "based on invidious racial or religious discrimination" and that the Constitution does "not permit altering [his Sixth Amendment rights] to further those potentially discriminatory interests." ECF No. 75, at 8. Mr. Conner has not identified evidence that the visa restrictions at issue here were "based on invidious racial or religious discrimination." *Id.* Nor has he provided support for the proposition that any animus motivating those policies amounts to a violation of *his* Sixth Amendment rights. In any event, Rule 15 depositions do not categorically "alter[] the bedrock principles of a criminal trial," *id.*, because the Confrontation Clause only prohibits introduction of testimonial hearsay when a defendant has *not* had a prior opportunity to cross-examine the witness, *see Crawford v. Washington*, 541 U.S. 36, 54, 68 (2004) (holding that a "testimonial statement" admitted against a defendant, "despite the fact that [the defendant] had no opportunity to cross-examine [the witness]," was "alone . . . sufficient to make out a violation of the Sixth Amendment").

detailed information about Ms. Sowemimo's work and expected testimony—and how that testimony relates to the testimony of other government witnesses. ECF No. 79, at 5-9. Mr. Conner primarily contends that Ms. Sowemimo's testimony will only "corroborate" A.S.'s testimony, which he believes does not satisfy the materiality standard. ECF No. 81, at 3-4.[7] The court agrees with the United States that there is a reasonable probability that, without Ms. Sowemimo's testimony, the verdict at Mr. Conner's trial may be different.

The government acknowledges that Ms. Sowemimo's testimony concerns only the amplification step of the DNA laboratory work, but it further explains that "[n]o one else conducted the amplification procedures or witnessed her conducting" them. ECF No. 79, at 8-9; *see* ECF No. 76, at 2 (making the same argument in reply in support of the original Rule 15 motion); *see also Conservation Force v. Jewell*, 160 F. Supp. 3d 194, 204 n.4 (D.D.C. 2016) ("[N]ew arguments made in a reply brief are forfeited . . . ."). Without Ms. Sowemimo's testimony, no government witness can explain to the jury that "the amplification was done in accordance with the Standard Operating Procedures and Quality Assurance Measures" that Bode Technology uses to ensure its scientists produce reliable analysis. ECF No. 79, at 9. And without that explanation, the United States' presentation of DNA evidence contains a missing link: Mr. Conner would be able to "challenge the entirety" of the DNA analyst's conclusion—that Mr. Conner cannot be excluded as a contributor to DNA obtained from A.S.'s sexual assault kit and that the DNA profile is statistically more likely to come from Mr. Conner and A.S. than from A.S. and an unknown individual—"because the ultimate analysis relies" on the quality of Ms. Sowemimo's work. *Id.*;

---

[7] Mr. Conner also maintains that he does not have necessary discovery to prepare for Ms. Sowemimo's deposition. ECF No. 81, at 3-4. The court will address the argument when it considers whether the interest of justice warrants granting the Rule 15 motion. *See infra* pp. 12-14.

*see id.* at 7-8 (explaining the DNA testing that Bode Technology employees conducted and the conclusions that the DNA analyst—someone other than Ms. Sowemimo—reached).    DNA evidence can "be powerful evidence of guilt," even when a defendant attacks the probative value of an analyst's conclusion.    *McDaniel v. Brown*, 558 U.S. 120, 132 (2010) (per curiam). Mr. Conner's possible challenge to the validity of the amplification alone could persuade a jury to reject potentially powerful inculpatory evidence.    *See United States v. Morrow*, 374 F. Supp. 2d 51, 60-61 (D.D.C. 2005) (explaining that, under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the court's admissibility inquiry "focuses on the scientific validity of the expert's methods").

Mr. Conner's argument about the corroborative value of A.S.'s testimony lacks merit.    In short, Mr. Conner relies on *Vo*, in which a court in this district explained that the Rule 15 materiality standard is not met when the potential deposition testimony is "corroborative or cumulative of other evidence."    53 F. Supp. 3d at 82 (quoting *Jefferson*, 594 F. Supp. 2d at 667); *see* ECF No. 81, at 2-3.    To be sure, the United States believes that the DNA analysis "will strongly corroborate A.S.'s account of the sexual assault charges at issue."    ECF No. 79, at 9; *see* ECF No. 76, at 4 (arguing that the result of the DNA testing will "corroborate[] [the] sexual acts and/or contacts [that allegedly] occurred").    But Ms. Sowemimo's testimony is not corroborative of A.S.'s potential testimony in the *way* that *Vo* uses the term, and allowing the government to conduct a pretrial deposition does not offend the principles that Rule 15's exceptional-circumstances requirement is designed to protect.

The passage in *Vo* prohibiting depositions taken to preserve corroborative or cumulative evidence can be traced to *Kelley*, in which the D.C. Circuit affirmed the district court's denial of a defendant's Rule 15 motion.    36 F.3d at 1125.    There, Mr. Kelley, who had been charged in

8

connection with bribery, fraud, and other offenses, sought to depose "several potential government witnesses"—two co-conspirators who ultimately testified against him, one person involved in the scheme, and records custodians of two companies charged as co-conspirators. *Id.* at 1120-25. With respect to one witness, the D.C. Circuit concluded that Mr. Kelley had not established materiality because the potential testimony only "corroborate[d]" Mr. Kelley's trial testimony that "his original intention in opening [a bank] account was to hide money from his wife" rather than orchestrate a fraudulent scheme. *Id.* at 1125. Indeed, the witness would merely testify that Mr. Kelley had helped the witness open the relevant account and that the witness had signed several blank checks before turning over the account to Mr. Kelley. *Id.* Put differently, the potential deponent would have restated facts that Mr. Kelley eventually told the jury. This court therefore understands the D.C. Circuit's discussion of corroborative testimony in *Kelley* to mean that deposition testimony is not material under Rule 15 when it would present duplicative information to the jury. *See* Fed. R. Evid. 403 (permitting the court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . wasting time[] or needlessly presenting cumulative evidence"); *cf. United States v. Lynch*, No. 18-CR-577, 2023 WL 7927764, at *2 (N.D. Cal. Nov. 15, 2023) ("Even where testimony would be overlapping, a court may still find a Rule 15 motion to be warranted if that testimony is relevant to a critical and disputed issue in the case."). To conclude otherwise—as Mr. Conner suggests—would require a Rule 15 deponent to "provide totally unique testimony," which the court in *Vo* explained was unnecessary to establish materiality. *Vo*, 53 F. Supp. 3d at 82.

Unlike in *Kelley*, no similar connection between the witnesses' testimony exists here. Ms. Sowemimo may testify consistently with A.S.'s testimony, which could lead a rational jury to credit A.S.'s factual account of the alleged incident. To the extent that occurs at trial,

Ms. Sowemimo will support the government's case and generally corroborate what A.S. has alleged. But Ms. Sowemimo's substantive testimony contains little factual overlap with what the court anticipates A.S. will tell the jury at trial: Ms. Sowemimo will explain DNA amplification procedures while A.S. will provide testimony about the offenses alleged in Counts Three through Eleven of the superseding indictment. *See* ECF No. 35, at 3-7. Given the importance of Ms. Sowemimo's testimony and because the content of that testimony does not materially overlap with A.S.'s testimony, the court concludes that the United States has met its burden of showing that Ms. Sowemimo will provide "highly material" testimony to the jury. *Trabelsi*, 2023 WL 4341429, at *2 (quoting *Cooper*, 947 F. Supp. 2d at 112 n.2).

### B. Unavailability

The United States has also established Ms. Sowemimo's unavailability for Rule 15 purposes by addressing both concerns underlying the court's earlier unavailability finding. First, the original motion contained no information about Ms. Sowemimo's visa or immigration status, *see* ECF No. 78, at 7-12, but the United States has now provided enough detail for the court to assess the likelihood that Ms. Sowemimo can return to testify at trial. Ms. Sowemimo's F-1 visa expires on or about August 15, 2026. ECF No. 79, at 11. The Executive Branch has suspended the entry of Nigerian nationals with F visas. *See supra* pp. 4-5. And, although Ms. Sowemimo may be eligible for an H-1B visa, she previously applied for that status and was unsuccessful in the visa lottery. ECF No. 79, at 11. There is no indication that the visa restrictions imposed on Nigerian nationals will change *or* that another H-1B lottery cycle will commence before Mr. Conner's trial. Second, whereas the court previously noted that the United States had seemingly relied "solely on [Ms. Sowemimo's] assessment of her ability" to return, ECF No. 78, at 10, the government has now contacted Ms. Sowemimo's employer, Bode Technology, which

would have relevant information about its employee's immigration status, *see* ECF No. 79, at 11. At this juncture—given that the court is only resolving a motion to take a deposition and not a request to admit deposition testimony into evidence at trial—the government's proffer establishes a "substantial likelihood . . . that [Ms. Sowemimo] . . . will not [be able to] testify." *Trabelsi*, 2023 WL 4341429, at *3 (third alteration in original) (quoting *Drogoul*, 1 F.3d at 1553).

Mr. Conner concedes that the amended Rule 15 motion contains "new information about Ms. Sowemimo's visa status" but contends that the United States should have offered more proof to substantiate its unavailability argument—including "specific information about which . . . [visa] polic[y] would serve to bar Ms. Sowemimo's [re]entry into the United States," "communications with State Department or immigration officials concerning Ms. Sowemimo's potential travel," and other "supporting documentation."  ECF No. 81, at 5.  Adopting Mr. Conner's position would effectively "require the government to assert with *certainty* that a witness will be unavailable for trial months ahead of time," which is both "unreasonable and undesirable."  *Drogoul*, 1 F.3d at 1553 (emphasis added) (quoting *United States v. Sines*, 761 F.2d 1434, 1439 (9th Cir. 1985)); *see* Reply at 3-4.  What is more, Mr. Conner's argument is better suited as a challenge to the admissibility of Ms. Sowemimo's deposition testimony than to allowing the deposition to proceed altogether.  *See* ECF No. 75, at 6 ("[O]ne executive branch agency . . . argues that other executive branch officials may bar Ms. Sowemimo from entering the country to testify at trial, not because of any concern directed at Ms. Sowemimo herself, but because of purely political reasons targeting all nationals of a certain country."); *cf. United States v. Burden*, 934 F.3d 675, 688-89 (D.C. Cir. 2019) (deciding whether the district court erroneously admitted deposition testimony at trial in violation of the Confrontation Clause because the witness was not "unavailable" and explaining that "[w]here the government itself bears some responsibility for the difficulty of procuring the

witness . . . , [it] will have to make greater exertions to satisfy the standard of good-faith and reasonable efforts than it would have if it had not played any role").  If Mr. Conner objects to the admission of Ms. Sowemimo's testimony at trial based on her unavailability under Federal Rule of Evidence 804(a)(5) or the Sixth Amendment's Confrontation Clause, he may assert those arguments in an appropriate pretrial motion.

### C.    Interest of Justice

The court previously indicated that two interest-of-justice considerations counseled against permitting a deposition to proceed.  ECF No. 78, at 12-13 & n.8; *see Vo*, 53 F. Supp. 3d at 82 (explaining that courts have interpreted Rule 15's interest-of-justice language to require consideration of "countervailing considerations").  In light of the United States' amended motion, neither warrants denying the requested Rule 15 deposition.

First, Mr. Conner explains he will not have received Rule 16 expert disclosures prior to cross-examining Ms. Sowemimo in a deposition.  ECF No. 81, at 6-7; *see* ECF No. 75, at 9 n.3. But the United States has now explained that it does not anticipate certifying Ms. Sowemimo as an expert witness, "so there would not be an expert notice filed for [her]."  ECF No. 79, at 9; *see* Reply at 3.  While Mr. Conner asserts that he is entitled to "*full* Rule 16 expert disclosures" before cross-examining *only* Ms. Sowemimo, ECF No. 81, at 6 (emphasis added), the court will instead "require disclosure" of all "materials that the government possesses and must eventually turn over before trial, if [Mr. Conner] can make use of those materials" in the deposition, *Cooper*, 947 F. Supp. 2d at 117.  The court will also order the United States to turn over any discovery meeting that standard at least five days in advance of the deposition.  *See* Reply at 3 (explaining the United States' efforts to provide materials before the deposition).  Further, Mr. Conner is permitted to make appropriate objections during the deposition, including any based on alleged discovery

violations.  And, in the event the United States produces discovery after the deposition that would have been necessary for Mr. Conner to adequately confront Ms. Sowemimo as permitted by the Confrontation Clause—or for Mr. Conner's counsel to provide effective assistance of counsel under the Sixth Amendment—the court will entertain pretrial motions to exclude Ms. Sowemimo's deposition testimony.  The same is true for Mr. Conner's objection to allowing Ms. Sowemimo to testify "without having first been qualified as an expert" because "[a]mplification is not a matter within the ken of a lay witness."  ECF No. 81, at 7.  The court will not instruct the United States how to try its case, *see* Reply at 3 (outlining the government's theory why expert qualification is unnecessary given the substance of Ms. Sowemimo's expected testimony), but having Ms. Sowemimo testify at a deposition as a lay witness may pose problems if Mr. Conner subsequently prevails on a pretrial *Daubert* challenge.

Second, the United States has not yet provided any *Jencks* or *Giglio* material it would be required to disclose before Ms. Sowemimo testifies.  ECF No. 81, at 4 n.4; *see* ECF No. 75, at 9 n.3 (same); *see also* ECF No. 81, at 4 (explaining that the United States provided Bode Technology's standard operating procedures on July 30, 2026, but not any "validation studies").  But the government has now committed to providing "[a]ny impeachment material . . . prior to [Ms. Sowemimo's] deposition testimony, just as it would prior to trial testimony."  ECF No. 79, at 9.  As with other discovery that the United States must provide before the deposition, *see supra* p. 12, the court will require the United States to disclose impeachment materials at least five days in advance of the deposition.  And consistent with 18 U.S.C. § 3500(a), the United States must provide Mr. Conner with all *Jencks* material that is not otherwise discoverable after Ms. Sowemimo testifies on direct examination.

Finally, the court notes that the United States has proposed procedures for how the Rule 15 deposition should proceed.  ECF No. 79, at 12.  The court will direct Mr. Conner to file any objections or propose alternative procedures and allow the United States to respond.

### III.    CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that the United States' Amended Motion to Take Deposition, ECF No. 79, is **GRANTED**.  It is further **ORDERED** that, based on the parties' availability, the deposition will take place on August 10, 2026 at 9:30 a.m. in Courtroom 21.  It is further **ORDERED** that the United States shall make the necessary arrangements to videotape and transcribe the deposition.  It is further **ORDERED** that, on or before August 5, 2026, the United States shall disclose all materials in its care, custody, or control that it would be required to turn over before trial and that Mr. Conner may need to effectively cross-examine Ms. Sowemimo, which includes any *Brady* and *Giglio* materials.  All remaining *Jencks* material must be provided to Mr. Conner after Ms. Sowemimo's direct examination.  And it is further **ORDERED** that Mr. Conner shall file any objections to the proposed deposition procedures on or before August 5, 2026, and the United States shall file any reply in support of its proposed procedures or before August 6, 2026.

**SO ORDERED.**

_____
LOREN L. ALIKHAN
United States District Judge

Date:   August 3, 2026