**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **v.** | : | **Case No. 24-cr-350-LLA** |
| | : | |
| **JOHN RAYMOND CONNER, III** | : | |
| | : | |
| **Defendant.** | : | |

# OMNIBUS MOTION TO DISMISS

Defendant John Raymond Conner, III ("Mr. Conner"), by and through his counsel, Michael E. Lawlor and Brennan, McKenna & Lawlor, Chtd., respectfully submits this Omnibus Motion to Dismiss with respect to the Superseding Indictment (ECF No. 35). In this Motion, Mr. Conner seeks the dismissal of: (1) all counts of the Superseding Indictment based on the Government's grand jury-related misconduct; (2) Counts One and Two based on prejudicial preindictment delay; and (3) Counts Thirteen through Eighteen because they fail to allege a legally valid predicate crime of violence. Mr. Conner respectfully requests a hearing on this Motion.[1]

[1] As to the first and second components of this Motion, Mr. Conner requests an evidentiary hearing.

## I. Background

On January 29, 2025, the Government filed an eighteen-count Superseding Indictment charging Mr. Conner with offenses including first-degree sexual abuse while armed (with aggravating circumstances), kidnapping while armed, assault with a dangerous weapon, blackmail, failure to register as a sex offender, and commission of a crime of violence while failing to register as a sex offender. (ECF No. 35.) The alleged offenses relate to three time periods, two of which overlap: August 24, 2009 (alleged stranger sexual assault of A.B.; Counts 1 and 2); April 17, 2023 (alleged acquaintance sexual assault of A.S. while also having failed to register as a sex offender; Counts 3, 4, 5, 6, 7, 8, 9, 10, 11, 13, 14, 15, 16, 17, 18); and September 1, 2022 through February 13, 2024 (failure to register as a sex offender; Count 12). A jury trial is scheduled to begin on October 26, 2026.

## II. Motion to Dismiss Based on Prosecutorial Misconduct in Grand Jury Proceedings

The Court should dismiss the Superseding Indictment based on the Government's misconduct before Superior Court and federal grand juries in this matter. By way of background, Mr. Conner was first charged with offenses related to those currently pending in the Superseding Indictment on February 12, 2024. On that date, MPD Detective Alexander Mac Bean swore out an affidavit in support of a Superior Court warrant for Mr. Conner's arrest in connection with two counts of first degree sexual abuse while armed with aggravating circumstances, one related

to the August 24, 2009 alleged sexual assault of AB and the other related to the April 17, 2023 alleged sexual assault of AS. *See* Ex. A (Superior Court Gerstein Affidavit in 2024-CF1-001461). On February 13, 2024, Mr. Conner was arrested pursuant to the warrant. On February 14, 2024, Mr. Conner made his initial appearance in Superior Court, at which time he was appointed counsel and ordered detained pending trial. *See* Ex. B (Superior Court docket printout in 2024-CF1-001461). A preliminary hearing was scheduled for February 23, 2024, but was apparently continued at the request of defense counsel, who subsequently withdrew from the case. After new counsel was appointed, a preliminary hearing was scheduled for May 17, 2024 and a jury trial was scheduled for September 24, 2024. On May 16, 2024, the preliminary hearing was rescheduled for June 20, 2024.

The preliminary hearing never took place. On May 21, 2024, the Government sought and obtained a Complaint (supported by an Affidavit from Detective Mac Bean) charging Mr. Conner in this Court with the following alleged offenses: failure to register as a sex offender, committing a crime of violence while having failed to register as a sex offender, and first degree sexual abuse while armed with aggravating circumstances (related again to the alleged sexual assaults of AB in 2009 and AS in 2023). (ECF No. 1.) Mr. Conner appeared in this Court on at least three occasions while the related Superior Court case was still pending. On June 10, 2024, the Government moved to dismiss the Superior Court case. *See* Ex. C (Superior

Court Motion to Dismiss). The Government represented that it sought dismissal of the Superior Court charges "as the defendant has been charged by complaint in United States District Court for the District of Columbia Case Number 24-MJ-180." *Id*. In other words, after the filing of the federal Criminal Complaint, the Government had no intention of proceeding with this matter in Superior Court. The Superior Court dismissed the charges on June 10, 2024, the very day the Government filed its motion.

Before the filing of the federal Criminal Complaint, the Government presented a number of civilian witnesses (all of whom knew Mr. Conner) to the Superior Court grand jury: (1) WR on February 27, 2024; (2) LT on April 11, 2024; (3) VL on April 23, 2024; (4) LW on April 25, 2024; and (5) AG on April 26, 2024. As noted above, by May 21, 2024, the Government had decided that it would not be pursuing this case in Superior Court. Nonetheless, on June 5, 2024, the Government called NH (Mr. Conner's former significant other; a civilian) as a witness before the *Superior Court* grand jury. On June 6, 2024, the Government called MPD Detective Ryan Devlin to testify before a federal grand jury. As of June 10, 2024, there was no longer any case pending in Superior Court. However, on July 3, 2024, the Government presented the testimony of AS (one of the two charged complainants) before the Superior Court grand jury. On July 25, 2024, the Government presented two civilian witnesses (AP and MT) before the federal grand jury. On August 1,

2024, the Government presented the testimony of Detective Mac Bean before the federal grand jury. On that same date, the Government filed the original Indictment in this case. (ECF No. 20.)

The Government presented at least two witnesses, NH and AS, to a Superior Court grand jury despite knowing that it had no intention of seeking an indictment in that court and despite having already obtained a federal criminal complaint charging the same offenses as those at issue in the abandoned Superior Court case.[2] With respect to AS, the Government's misconduct was even more egregious because at the time of AS's Superior Court grand jury testimony, the Superior Court charges had already been dismissed on the Government's motion and the Government had already started presenting witnesses before the federal grand jury. Under Federal Rule of Criminal Procedure 12(b)(3)(A)(v), a defendant in a criminal case may file a motion based on "a defect in instituting the prosecution, including" "an error in the grand-jury proceeding or preliminary hearing." To be sure, "[w]hen examining a claim that the grand-jury proceeding was infected by prosecutorial misconduct, the Court first affords that proceeding a presumption of regularity." *United States v. Titilayo Akintomide Akinyoyenu*, 199 F. Supp. 3d 34, 36 (D.D.C. 2016) (internal

[2] Mr. Conner does not know precisely when the Government made the decision to pursue this case in federal court. To the extent that decision was made before May 21, 2024 and before any other witness had testified before a Superior Court grand jury, Mr. Conner requests that the Court order the Government to disclose those circumstances, which could provide further support for the relief requested.

quotation and citation omitted). However, a court will consider dismissing an indictment "if the defendant shows that the prosecutor instituted some error or irregularity — more than a mere assertion that the prosecutor presented inadequate, unreliable or incompetent evidence." *Id*. (internal quotation and citation omitted). The Government's tactic in this case of bouncing between Superior Court and federal grand juries – when it already knew that it was not going to be proceeding in Superior Court – is highly irregular and improper. Moreover, courts have held that it is improper for a prosecutor to use the compulsory process of the grand jury for the mere purpose of prosecutorial investigation, untethered to legitimate grand jury activity. *Cf.*, *Durbin v. United States*, 221 F.2d 520, 522 (D.C. Cir. 1954); *Perez v. United States*, 968 A.2d 39, 61 (D.C. 2009); *United States v. Vo*, 78 F. Supp. 3d 171, 184 (D.D.C. 2015).

Here, while the Government did present NH and AS to a Superior Court grand jury (shortly after conducting interviews in a place referred to in the grand jury transcripts as "upstairs"), the Government presented this testimony before a grand jury that was never going to be asked to consider an indictment. There is strong circumstantial evidence that, rather than seeking testimony to aid the Superior Court grand jury in deciding whether to issue an indictment, the Government called these witnesses to obtain pretrial interviews and statements under oath. The Government presented these witnesses to further the interests of prosecutors, not legitimate grand

jury proceedings. As to NH, it bears noting that just one day after the witness' sham grand jury testimony, the Government presented a law enforcement witness to the federal grand jury. And the Government presented NH to the Superior Court grand jury after it had already decided that it would be pursuing the case in federal court.

As to AS, the Government presented her testimony before the Superior Court grand jury *after* the Superior Court charges had already been *dismissed*. In other words, the Superior Court grand jury was not investigating anything in this matter because the Government elected to drop the proceedings. While AS did speak with investigators on April 17 and April 19, 2023, Det. Oranchak (the initial lead investigator into the April 17 allegations) noted in a report that as of May 14, 2023, the detective was "[s]till trying to get the complainant to answer my calls."[3] From July 2023 through late-October 2023, Det. Oranchak was still having trouble getting in contact with AS. As of October 26, 2023, AS apparently called Det. Oranchak and stated that she felt safe enough to move forward in the investigation. However, it is not clear from the materials provided in discovery whether AS had any contact with investigators (or whether investigators reached out to her) in the months between November 2023 and July 2024.[4] In other words, there is a likelihood that

[3] On April 23, 2023, AS declined Det. Oranchak's request for her to participate in a "One Party" (recorded call).

[4] Det. Oranchak's file contains what appears to be a four-page draft affidavit in support of an arrest warrant related to the April 17, 2023 allegations. It does not appear that Det. Oranchak ever formally applied for charges in this matter.

the Government compelled AS's Superior Court grand jury testimony to obtain a pretrial interview and to obtain statements under oath, not to support any request that a Superior Court grand jury return an indictment.

Mr. Conner does not have complete insight into the reasons for the Government's conduct with respect to the Superior Court and federal grand juries that heard testimony in this matter.[5] However, Mr. Conner has made a strong showing that the Government proceeded in an irregular and improper manner.[6] The Government's grand jury misconduct has prejudiced Mr. Conner and his defense of

[5] The Government has recently represented to counsel that it read the transcripts of the Superior Court grand jury proceedings to the federal grand jury that returned the original Indictment in this case. Mr. Conner has not received any transcripts of this reading.

[6] Separate and apart from the witness testimony issues addressed above, the Government abused the grand jury process in other concerning ways. For example, on June 20, 2024 (10 days *after* the Superior Court case was dismissed), the Government sent a Superior Court grand jury subpoena to the DC Department of Corrections commanding the custodian of records to appear before a *Superior Court* grand jury on July 8, 2024 with copies of Mr. Conner's jail calls from March 19, 2024 through June 20, 2024. The subpoena bears the case number of the *dismissed* matter. On December 5, 2024, the Government sent the DC DOC another Superior Court grand jury subpoena commanding the custodian of records to appear before a Superior Court grand jury on December 26, 2024 with copies of Mr. Conner's jail calls from June 21, 2021 through December 5, 2024. The subpoena bears the case number of the Superior Court matter that had been *dismissed* (at the Government's request) several months earlier. The DC DOC produced records responsive to both improper subpoenas. These further abuses of the grand jury process provide additional support for Mr. Conner's motion and request for an evidentiary hearing and dismissal. If the Court does not dismiss the Indictment, Mr. Conner will object to the admission of any records obtained, whether directly or indirectly, as a result of abuse of the grand jury process.

this case. The Government's conduct violates Mr. Conner's Fifth Amendment rights. The Government should be required to explain why it took these actions. The Court should also require the Government to produce any discovery related to the timing of its decision to pursue this matter in federal court rather than Superior Court and it its practice of calling witnesses to the Superior Court grand jury after federal proceedings had already commenced and, in the case of AS, after the Superior Court charges had been dismissed. Ultimately, if this Court requires more information before deciding whether to dismiss the Superseding Indictment, the Court should convene an evidentiary hearing with respect to the Government's grand jury misconduct. In the alternative, the Court should preclude the Government from calling NH and AS to testify at trial.

## III. Motion to Dismiss Counts One and Two for Preindictment Delay

Pursuant to Federal Rule of Criminal Procedure 12(b)(3) and the Fifth Amendment, Mr. Conner moves to dismiss Counts One and Two of the Superseding Indictment based on preindictment delay. The offenses charged in Counts One and Two related to the August 24, 2009 alleged sexual assault of AB. The alleged events at issue would have occurred 14 years, 5 months, and 19 days before the Superior Court arrest warrant was issued and 14 years, 11 months, and 8 days before Mr. Conner was first charged by way of Indictment in this Court. The sheer magnitude of the delay, which resulted in charges being brought just barely before the

applicable 15-year statute of limitations, has severely prejudiced Mr. Conner's right to a fair trial.

It is well established that "if preindictment delay is so substantial as to prejudice a defendant's right to a fair trial, the Due Process Clause of the Fifth Amendment may necessitate dismissal." *United States v. McCormick*, No. 18-0359 (JDB), 2019 U.S. Dist. LEXIS 203977, at *6 (D.D.C. Nov. 25, 2019) (citing *United States v. Mahoney*, 698 F. Supp. 344, 346 (D.D.C. 1988)) (internal quotations omitted). "To establish a due process violation for pre-indictment delay, a defendant must establish that the delay resulted in actual prejudice to the conduct of the defense and that the government intentionally delayed to gain some tactical advantage over the defendant." *United States v. Evans*, No. 22-cr-63 (RCL), 2022 U.S. Dist. LEXIS 202784, at *7 (D.D.C. Nov. 8, 2022) (citing *United States v. Brodie*, 326 F. Supp. 2d 83, 87 (D.D.C. 2004)) (internal quotations and citations omitted). A delay of 14.5 years is significant. Many types of evidence that would have been available had these charges been brought earlier are no longer available. Cell phone providers do not keep records dating back 14.5 years. Cell tower dumps are not available going back 14.5 years. It does not appear that the Government ever obtained any call detail records or tower dump records related to this incident. That data could have been used to track down individuals who were present in close proximity to the incident at the time of the incident. That data is lost forever. The Government has produced

no surveillance footage related to this incident. Surveillance footage from the school and from surrounding areas could have been powerful evidence in this case, and again, could have shown the presence of other individuals in the vicinity of the alleged incident at the time of the incident. Such footage is not maintained for 14.5 years. It is lost to Mr. Conner.

The Government's delay and litigation tactics (including redactions to discovery) have also caused critical witnesses to be unavailable to Mr. Conner. As the Court will recall, the alleged incident occurred at a school that was under renovations. Construction workers and others were regularly present at the location. AB and her husband worked in the cleaning crew. One day after the alleged sexual assault, MPD officers interviewed several members of the construction and cleaning crews. These interviews are memorialized in the following heavily redacted report.

**Narrative**

**SX09-163**

**8-25-09**
**1655HOURS**
**[redacted] (Super. Turner Construction)**
**[redacted] (cleaning crew J& B Cleaning Services)**
**[redacted] (cleaning crew)**
**[redacted] supervisor cleaning crew J& B Cleaning Services)**
**[redacted] (cleaning crew)**
**[redacted] cleaning)**

**The undersigned detective along with detective Zibrat responded to 2600 Douglas Rd. S.E. to interview the construction crew and all the cleaning crew working.**

**[redacted]. Superintendent for Turner Construction for the Kip Charter at [redacted] [redacted] stated that he was last to leave the site and stated that he checked all the doors and they were secure. [redacted] stated that he has not had any incident at this location, the site was secure up until yesterday when he had to open the parking on the west side of the building for the teachers to use [redacted] stated that the parameter behind the school and east side is secure.**

**All the cleaning crew was interviewed with the assistance Officer Alvarenga of the Seventh District. No one saw anyone enter or leave the building while they cleaning the building. No heard the complainant screaming or hollowing while the incident took place. There were only two people on this side of the building, the complainant and her husband, who had just left her to dump the trash and had been gone approximately fifteen minutes.**

**Kip Charter School is the old Douglas Junior High School being renovated, one third of school is complete and the other two thirds are still under construction. There are approximately ten different entrances to the school.**

Moreover, the Government has heavily redacted the handwritten notes of law enforcement officers who investigated the alleged incident. It does not appear that these interviews were audio and video recorded. It is not clear how many among the redacted list of people are males. These individuals are potential alternate suspects or, at a minimum, potential fact witnesses. Yet the Government has elected to shield their identities from Mr. Conner. The Government's report does not even summarize each witness' statement. It simply lumps all statements together. Mr. Conner is not able to attempt to locate these individuals. It is also unclear whether the Government ever attempted to compare a latent print recovered from the scene to the prints of any of these individuals. Mr. Conner knows from the Government's analysis that the sole latent print that was suitable for comparison *does not* match him. But, as a result of the Government's delay, Mr. Conner cannot ascertain whether that print matches any of these other individuals.

The delay is even more prejudicial because, just a few days after these perfunctory interviews, AB reported to an MPD official that she believed that the assailant worked at the school or lived in the neighborhood. In other words, AB provided a large pool of potential suspects. Given the Government's delay, that pool of suspects has undoubtedly dissipated from the area over the last decade and a half. Conducting a defense investigation involving an incident that is alleged to have occurred 14.5 years ago is difficult under any circumstances. It is nearly impossible

where the same appointed counsel must also investigate a 2023 allegation of an acquaintance sexual assault and a 2009 allegation, which another jurisdiction declined to prosecute as a result of the alleged victim's complete lack of credibility[7], involving a separate purported sexual assault. It is also impossible to conduct a defense investigation into the August 2009 allegations involving AB where the Government continues to disclose a steady stream of new DNA testing results.

There is no good reason for the Government's delay of 14.5 years. On February 23, 2010, Det. Bolding, the lead investigator, informed Ms. Hopkinson (one of the Government's experts from DFS) that all leads has been exhausted and the case was to be suspended. The Government conducted a serology analysis in this case as early as March 2010. On June 23, 2010, Det. DeSilva reported to DFS that Det. Boling would be obtaining an elimination sample from AB's husband and consent partner. There is no indication that Det. Boling did so. By November 2010, the Government received a DNA analysis report from Bode. There is absolutely no indication that the Government submitted any samples from this incident to CODIS at that time. Even after the Government was informed, on February 10, 2021, that no samples from this matter had been submitted to CODIS, the Government waited several additional years before running any sample in this matter through CODIS.

[7] The Government disclosed to counsel, for the first time last week, the name of the alleged victim in the Prince George's County incident.

There is simply no justification for the delay.[8] The Government's actions were calculated to ensure that much of the evidence that would have been useful to the defense as to this incident had been disappeared by the time charges were brought. There is no way to explain the Government's delay other than as an attempt to secure an advantage in future litigation. The Court should therefore dismiss the Counts of the Superseding Indictment related to the AB allegations.

## IV. The Court Should Dismiss Counts 13-18 for Failure to State an Offense

Pursuant to Rule 12 of the Federal Rules of Criminal Procedure, Counts 13-18 must be dismissed because they fail to alleged a valid predicate crime of violence. In Count 12, Mr. Conner is charged with a violation of 18 U.S.C. § 2250(a) That statute provides as follows: "Whoever— (1) is required to register under the Sex Offender Registration and Notification Act; (2) (A) is a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by reason of a conviction under Federal law (including the Uniform Code of Military Justice [10 USCS §§ 801 et seq.]), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or (B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and

[8] To the extent the Government disputes any issue of fact or contends that it did not delay in bringing charges related to AB, then the Court should hold an evidentiary hearing.

(3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act; shall be fined under this title or imprisoned not more than 10 years, or both." In Counts 13-18, Mr. Conner is charged with violations of 18 U.S.C. § 2250(d), which provides: "(1) In general. An individual described in subsection (a) or (b) who commits a crime of violence under Federal law (including the Uniform Code of Military Justice [10 USCS §§ 801 et seq.]), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States shall be imprisoned for not less than 5 years and not more than 30 years. (2) Additional punishment. The punishment provided in paragraph (1) shall be in addition and consecutive to the punishment provided for the violation described in subsection (a) or (b)." The alleged predicate crime of violence under federal law at issue for Counts 13-18 is 22 D.C. Code § 3002(a)(1) (first degree sexual abuse), as charged in Counts 3-8, respectively.

22 D.C. Code § 3002 does not qualify as a valid predicate crime of violence. Counts 13-18 must therefore be dismissed. 18 U.S.C. § 2250(d) does not define the term crime of violence. Accordingly, 18 U.S.C. § 16 provides the definition. *See, e.g.*, *United States v. Petties*, 42 F.4th 388, 391 (4th Cir. 2022). The definition of crime of violence found at 18 U.S.C. § 16(b) (also known as the residual clause) has been held to be unconstitutional. *See, e.g.*, *United States v. Eshetu*, 898 F.3d 36, 37 (D.C. Cir. 2018). Accordingly, the applicable definition is found at 18 U.S.C. §

16(a), which states as follows: "The term 'crime of violence' means— (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another[.]" The Court employs the categorical approach to determine whether an offense qualifies as a crime of violence. *E.g.*, *United States v. Burwell*, 122 F.4th 984, 988 (D.C. Cir. 2024); *United States v. Mahdi*, 826 F. Supp. 3d 1, 9 (D.D.C. 2026). In conducting its analysis, the Court must determine whether the statutory provision of 22 D.C. Code § 3002 is indivisible or divisible. *Mahdi*, 826 F. Supp. 3d at 11. First degree sexual abuse under the D.C. Code is an indivisible offense. It sets forth one single offense, first degree sexual abuse, with one penalty structure. It also sets forth various factual ways in which the offense may be committed. These factors demonstrate that the statue at issue is indivisible and sets forth one single offense. *See Burwell*, 122 F.4th at 990 ("when legislators attach the same punishment for statutory alternatives, that provides meaningful evidence that the provision may be indivisible"). Additionally, to the extent there is any doubt over whether the statute at issue is divisible or indivisible, courts presume that the statute is indivisible. *See United States v. Cantu*, 964 F.3d 924, 929 (10th Cir. 2020) ("If, however, we cannot ultimately say with certainty that the statute is divisible, we will not apply the modified-categorical approach."); *United States v. Redd*, 85 F.4th 153, 164-65 (4th Cir. 2023) ("If at the end of the day, after employing the tools set out in *Mathis*, a court is *still* unclear on the divisibility

of the statute, the statute must be treated as indivisible.”). Indeed, the Government has implicitly conceded that § 3002 is indivisible as it has charged violations of multiple subsections of the statute as a single offense in several counts of the Indictment. *See, e.g.* Count 7 (charging violation of both §§ 3002(a)(1) and (a)(2)). If the statute were truly divisible, then these counts would be invalid as duplicitous. It is clear that § 3002 can be violated by means that do not satisfy 18 U.S.C. § 16(a). For example, the D.C. offense of first-degree sexual abuse can be committed by a threat of kidnapping against any person. Kidnapping is not a crime of violence under federal law. *United States v. Smith*, 605 F. Supp. 3d 1, 18 (D.D.C. 2022). A threat to commit an offense that its not itself a crime of violence cannot satisfy the requirements of 18 U.S.C. § 16(a). Moreover, while the manner of first degree sexual abuse set forth in § 3002(a)(1) requires the use of *force*, it does not require the use of *physical* force set forth in the definition at 18 U.S.C. § 16(a). Accordingly, because 22 D.C. Code § 3002 does not constitute a crime of violence, Counts 13-18 must be dismissed.

## CONCLUSION

For the reasons stated above and those to be presented at the motions hearing, this Court should dismiss the Superseding Indictment in its entirely, or, in the alternative, dismiss Counts One and Two and Counts Thirteen through Eighteen.

Respectfully submitted,

___________/s/_______________
Michael E. Lawlor
Brennan, McKenna & Lawlor, Chtd.
6305 Ivy Lane, Suite 700
Greenbelt, Maryland 20770
(301) 474-0044

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 14, 2026, the foregoing was served on all parties via ECF.

_____/s/________
Michael E. Lawlor