**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **v.** | : | **Case No. 24-cr-350-LLA** |
| | : | |
| **JOHN RAYMOND CONNER, III** | : | |
| | : | |
| **Defendant.** | : | |

---

**MOTION TO SUPPRESS FRUITS OF SEARCHES CONDUCTED PURSUANT TO WARRANTS**

Defendant John Raymond Conner, III ("Mr. Conner"), by and through his counsel, Michael E. Lawlor and Brennan, McKenna & Lawlor, Chtd., respectfully submits this Motion to Suppress Fruits of Searches Conducted Pursuant to Warrants. In this Motion, Mr. Conner seeks the suppression of evidence obtained from, whether directly or indirectly, the fruits of: (1) the February 12, 2024 DNA search warrant (Ex. A); (2) the February 15, 2024 cell phone search warrant (Ex. B); and (3) the March 21, 2024 Facebook search warrant (Ex. C). Mr. Conner respectfully requests an evidentiary hearing on this Motion.

## I. Background

On January 29, 2025, the Government filed an eighteen-count Superseding Indictment charging Mr. Conner with offenses including first-degree sexual abuse while armed (with aggravating circumstances), kidnapping while armed, assault

with a dangerous weapon, blackmail, failure to register as a sex offender, and commission of a crime of violence while failing to register as a sex offender. (ECF No. 35.) The alleged offenses relate to three time periods, two of which overlap: August 24, 2009 (alleged stranger sexual assault of A.B.; Counts 1 and 2); April 17, 2023 (alleged acquaintance sexual assault of A.S. while also having failed to register as a sex offender; Counts 3, 4, 5, 6, 7, 8, 9, 10, 11, 13, 14, 15, 16, 17, 18); and September 1, 2022 through February 13, 2024 (failure to register as a sex offender; Count 12). A jury trial is scheduled to begin on October 26, 2026.

Additionally, as relevant for this Motion, the Government has moved to admit at trial evidence of an uncharged alleged sexual assault that would have occurred in Prince George's County, Maryland on July 11, 2009. The Office of the State's Attorney for Prince George's County declined to proceed with that matter because the alleged victim was not credible.

For the reasons set forth below and those to be presented at an evidentiary hearing, the Court should suppress the fruits of the DNA search warrant, the cell phone search warrant, and the Facebook search warrant.

## II. DNA Search Warrant

On February 12, 2024, Det. MacBean of MPD applied for and obtained a Superior Court warrant for Mr. Conner's arrest based on the alleged August 2009 sexual assault of AB and the alleged April 2023 sexual assault of AS. On the same

day, Det. MacBean applied for and received a warrant to obtain a DNA sample from Mr. Conner. On February 13, 2024 shortly after 3 p.m., Mr. Conner was arrested outside of his mother's home on Langston Terrace in Northeast, D.C.[1] Mr. Conner was then transported by law enforcement to the Fifth District MPD station on Bladensburg Road in Northeast, D.C. There, Detectives MacBean and Devlin interrogated Mr. Conner.[2] After the unlawful interrogation, at approximately 5:10 p.m., the detectives return to the interrogation room with a crime scene technician. At this time, it appears that Det. Devlin takes the lead. Det. Devlin states that he has a warrant for a buccal swab. Mr. Conner indicates that the authorities already have his DNA. Det. Devlin then acknowledges that Mr. Conner requested an attorney and states that he is not going to "go into anything." Det. Devlin then explains that "we're gonna collect" the DNA sample. The crime scene technician asks Mr. Conner to open his mouth. Mr. Conner refuses and states that he does not consent to the search. Det. Devlin then becomes irate. The detective threatens to charge Mr. Conner with obstruction of justice and contempt of court.

---

[1] Notwithstanding the Government's current allegation that Mr. Conner failed to register as a sex offender, the MPD detectives and the United States Marshals Service were able to obtain accurate information about Mr. Conner's plans for that day (including his work schedule with Pizza Hut) from information he apparently provided to the sex offender registry. A USMS report also describes Mr. Conner's -6757 phone number as "unknown." That is not true. The number was well known to law enforcement. As the Government knows, Mr. Conner provided that phone number in connection with his sex offender registration on November 2, 2023.

[2] Mr. Conner has filed a Motion to Suppress Statements.

Mr. Conner reiterates his request for an attorney. He states that he wants an attorney present. Det. Devlin then asks Mr. Conner is he (Mr. Conner) wants the detective to read the search warrant aloud. Mr. Conner asks whether the detective is an attorney. Still angry, Det. Devlin responds: “ Do you want to keep talking or do you want to shut up?” Mr. Conner states again that he wants an attorney present. Mr. Conner clarified that he was not refusing but simply wanted an attorney present. Mr. Conner stated that he wanted a lawyer present to explain the warrant. Det. Devlin reiterated his threat that Mr. Conner would be charged with additional offenses (beyond the two counts of first degree sexual abuse) for having the audacity to request the presence of an attorney during the execution of the DNA warrant. Mr. Conner then acquiesced to the detective’s threats and, under duress, allowed the technician to swab inside of his mouth.

The Government send the swabs to Bode, a private DNA laboratory, which apparently received the swabs in March 2024. As recently as August 2026, the Government repeatedly ran comparisons and experiments against the DNA sample.

First, the Court should suppress the fruits of the DNA search warrant because it was executed in a unreasonable manner in violation of Mr. Conner’s Fourth, Fifth, Sixth, and Eighth Amendment rights. While the Government did obtain a warrant for the DNA sample, that warrant does not authorize Government agents to use improper threats to force compliance with their interpretation of a judicially

authorized warrant. As Mr. Conner stated, he was not refusing outright to comply with the warrant; he merely wished to have a lawyer present to explain the warrant to him. It is his right to have counsel present for that event. There is no reasonable interpretation of the interaction between Mr. Conner and the detective that could support an allegation of obstruction or contempt of court. In fact, it is commonplace for Superior Court buccal swab warrants to be executed in the cellblock of the Superior Court building. Mr. Conner made his first appearance before the Superior Court on February 14, 2024. At that hearing, he was appointed an attorney. It would have been entirely possible (and reasonable) for the Government to explain to defense counsel and the Court that it had obtained a warrant for Mr. Conner's DNA and to allow defense counsel time to consult with Mr. Conner and be present for the execution of the DNA warrant. Because the Government executed the warrant only after levying impermissible and legally baseless threats, the fruits of the warrant should be suppressed.

Second, the Court should suppress the fruits of the DNA warrant because the Government obtained the samples, generated a DNA profile, and then ran direct comparisons against Mr. Conner's genome for years after the warrant was issued. In this way, too, the warrant was executed in a unreasonable manner. While, assuming the initial buccal swabs were lawfully obtained (they were not), the Government might be able to justify the 2024 comparisons and experiments, there is no lawful

basis for the Government to retain the profile and conduce subsequent, warrantless, targeted comparisons against it in the years after the warrant was issued. But the Government did just that. In 2026, the Government searched Mr. Conner's genome, his most private information, to compare it (yet again) against samples in the AS and AB matters.[3] The Government most recently did so with respect to the 2009 Prince George's County incident (a matter that the relevant jurisdiction decline to prosecute because of the alleged victim's total lack of credibility).

Third, the Court should suppress the fruits of the DNA search warrant because, on its face, the warrant did not authorize the search for evidence of any crime other than first degree sexual abuse while armed with aggravating circumstances. Maryland sex offenses are not included among the offenses at issue. Accordingly, the use of the DNA profile to search for evidence of the 2009 Maryland alleged offense was improper and unreasonable in violation of the Fourth Amendment. There was no Maryland investigation underway. Maryland officials did not request MPD's assistance with this matter. To the contrary, Maryland had long since closed its investigation and declined to proceed with prosecution. And even if the warrant had properly authorized a search for evidence related to the

[3] The Government's concerns regarding Bode witness availability for trial do not justify subsequent searches conducted years after the warrant was issued.

Maryland incident (and it did not), waiting more than two years to conduct that search and comparison was not reasonable under the Fourth Amendment.[4]

For these reasons, the Court should suppress the fruits of the DNA search warrant.

## III. Cell Phone Search Warrant

The Court should also suppress the fruits of the February 15, 2024 cell phone search warrant. By way of background, at the time of Mr. Conner's arrest on February 13, 2024 (at approximately 3:22 pm)[5], law enforcement seized from Mr. Conner's person (without a warrant) a smart phone. There was no warrant authorizing the seizure of this cell phone. Mr. Conner requested that the officers leave his property with his family members. With no legal basis, the officers seized Mr. Conner's phone and transported it with them to the police station. Mr. Conner challenges the legality of the warrantless (and therefore presumptively unreasonable under the Fourth Amendment) seizure of his cell phone. *See, e.g.*, *United States v. Mickens*, 810 F. Supp. 3d 75, 78-79 (D.D.C. 2025). Because the initial warrantless

---

[4] The Government disclosed the Bode case file regarding testing in the Maryland incident in September 2026.

[5] The Government has redacted (including by blurring the faces of law enforcement officers) this body-worn camera footage for reasons that are unknown to Mr. Conner. Mr. Conner requests that the Government provide unredacted discovery.

seizure of the phone violated Mr. Conner's Fourth Amendment rights, the Court should suppress the fruits of the later obtained search warrant.

Moreover, on its face, the affidavit in support of the search warrant provided no nexus between the contents of the device seized on February 13, 2024 and the April 2023 alleged sexual assault of AS. There is no evidence in the affidavit that Mr. Conner was using the same device at both times. As a result of the lack of nexus, the Court should suppress the fruits of the cell phone search warrant.

Additionally, the warrant was executed in an unreasonable manner. On its face, the warrant was required to be executed with 10 days of its issuance. According to materials in discovery, the Government did not even provide the physical device to the digital forensics unit until March 4, 2024. And the Government did not attempt to extract the contents of the device until April 17, 2024. This delay is unreasonable under the terms of the warrant and under the Fourth Amendment.

**Metropolitan Police Department**
300 Indiana Avenue NW, Washington, DC 20001

**Report of Examination**
Digital Evidence Unit (DEU)
Data Extraction

| **CCN #:** | **Primary Detective:** | **Offense:** | **Submission Date:** | **Report Date:** |
|---|---|---|---|---|
| 23-059-757 | SA Nelson Rhone | First Degree Sex Assault | March 4, 2024 | April 17, 2024 |

**Requested Service:**

Extract data from the mobile device and provide to lead detective for review.

The extraction of the cell phone data was subject to a full search, allegedly within the parameters of the warrant, by May 31, 2024, when Neil D'Cunha of the U.S. Attorney's Office conducted a full search. *See* Ex. D.[6] Agent D'Cunha did not identify any images as being response to the terms of the warrant.

Inexplicably, the extraction was subjected to other subsequent searches. For example, from Cellebrite materials provided in discovery, counsel knows that someone from the Government rummaged through the extraction in mid-July 2024, a month and a half after the device had already been fully searched.




The person who conducted this subsequent and unauthorized search identified on July 15, 2024, three images of note.

[6] This report was provided to counsel in Word format. When counsel converted it to a PDF to attach as an exhibit, the date at the bottom left of the document updated to today's date.



No event with timestamp to present

Export Filters Actions Search

| # | Type | Tag description | Event | Labels | Created | Modified |
|---|---|---|---|---|---|---|
| 1 | Images | | 0ec55511837fe6d889f2caf0011090a394a0... | Important | 7/15/2024 2:19:27... | 7/15/2024 2:19:27 P |
| 2 | Images | | 72aeb435b5012cb0555dd3787cb3a5cf2d... | Important | 7/15/2024 2:29:11... | 7/15/2024 2:29:11 P |
| 3 | Images | | media_db_embedded_table-pt_rowid-1_c... | Important | 7/15/2024 2:32:17... | 7/15/2024 2:32:17 P |

These images *are not* the same as the two images of note identified in the Government's expert notice (ECF No. 90) for Caitlyn Tauriello.

> Ms. Tauriello will further testify about the following images located on the device:
>
> - File Name:
>   aba1bb093fff027dc28368a10467573567b15561e368124a9c4e3dbfd641e6e2
>   Mod: 2/13/2024 1:20:42 PM(UTC-5)
>   Size: 25039 bytes
> - File Name:
>   eb4f4d48e5d8c323dc051dd9c1adecc0fc69f61059f42ed84e57714c062601da
>   Mod: 2/13/2024 1:20:42 PM(UTC-5)
>   Size: 35871 bytes

Mr. Conner has no idea when or how Ms. Tauriello conducted her work. The Government has not provided an expert report for her. Counsel first learned of her existence when the Government filed its expert notice. However, it is clear that she conducted her search (now the third search) of the extraction after July 2024 because, based on her CV, she did not begin working with the U.S. Attorney's Office until November 2025. The Government's repeated searches of the cell phone extraction,

in perpetuity (March 2024, April 2024, May 2024, July 2024, sometime after November 2025), is not reasonable and was conducted in violation of the Fourth Amendment. The Government is not permitted to seize a large amount of data and rile through it at its leisure. Instead, the Government must take reasonable measures to execute a warrant and separate items that are responsive to the terms of a search warrant. Repeated searches, without a new warrant, are not reasonable.

## IV. Facebook Search Warrant

On March 6, 2024, the Government applied for a warrant to search a Facebook account associated with Mr. Conner. The application was denied as overbroad. On March 21, 2024, the Government applied for and obtained a warrant to search a Facebook account associated with a particular URL. The Court should suppress the fruits of that warrant. Mr. Conner has received in discovery three sets of Facebook returns. It is not clear to Mr. Conner why there are three sets of returns for one account. It also appears that the Government has, in violation of the terms of the warrant and the Fourth Amendment, retained access to materials that are plainly not covered by the terms of the warrant. For example, the warrant authorized the seizure of communications and messages between the user and AS from April 16, 2022 through April 17, 2023, yet the returns include (and the Government has access to) messages with individuals other than AS from that time period. Those messages are *not* covered by the warrant. The Government could have set forth AS's account

information with specificity in the warrant application to avoid gaining access to private communications as to which there was no probable cause. Indeed, the Government previously viewed Facebook messages on AS's phone back in 2023. However, the Government improperly obtained all communications with all accounts in the time period without regard for the terms of the warrant. The Government has not provided any reports regarding its review of the Facebook returns. Mr. Conner requests that the Government provide any such reports forthwith. At a minimum, the Court should preclude the Government from using any non-responsive data as well as any data obtained through an unreasonable review of the returns at trial.

## CONCLUSION

For the reasons stated above and those to be presented at an evidentiary hearing, this Court should suppress the fruits of the warrants at issue and suppress the fruits of the warrantless seizure of Mr. Conner's cell phone.

Respectfully submitted,

___________/s/_______________

Michael E. Lawlor
Brennan, McKenna & Lawlor, Chtd.
6305 Ivy Lane, Suite 700
Greenbelt, Maryland 20770
(301) 474-0044

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 14, 2026, the foregoing was served on all parties via ECF.

_____/s/________
Michael E. Lawlor